IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 20-00145-01-CR-W-BCW |
| ) | |
| JEREMIAH J. SIMPSON, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Pending is Defendant's Motion to Suppress, which was filed on May 17, 2022. Doc. 46.[1] On May 24, 2022, the Government filed its opposition to Defendant's motion. Doc. 47. Defendant did not file a reply in further support of his motion, and the time for doing so has passed. L.R. 7.0(c)(3). For the reasons set forth below, the undersigned recommends Defendant's Motion to Suppress be **DENIED**.

### I. BACKGROUND

On July 21, 2020, the grand jury returned an indictment charging Defendant Jeremiah J. Simpson with possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), possession with intent to distribute alprazolam in violation of 21 U.S.C. §§ 841(a)(1) and (b)(2), possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), and commission of felony offenses while on pretrial release in violation of 18 U.S.C. § 3147(1). Doc. 1. The charges stem from controlled substances and a firearm seized by law enforcement on May 8, 2020. *See id*. Defendant moves to suppress all

---

[1] Defendant previously sought and was granted leave to file his motion to suppress out of time. Docs. 44-45.

evidence seized on the grounds that law enforcement did not have reasonable suspicion to detain him, search his person, and search the vehicle he was driving. Doc. 46 at 3-5.

On June 22, 2022, the undersigned held an evidentiary hearing on Defendant's motion. Doc. 51; Doc. 52 (Transcript) (hereinafter, "Tr."). Defendant was present and represented by counsel, John Osgood. The Government was represented by Assistant United States Attorney Jeffrey McCarther. At the hearing, one witness – Officer Joshua Mousaw – testified. In addition, and without objection from Defendant, the Court admitted twenty-nine exhibits. Doc. 55.

## II. FINDINGS OF FACT

Based on the evidence adduced at the evidentiary hearing, the undersigned submits the following findings of fact:

1. At approximately 10:40 p.m. on May 8, 2020, Lee's Summit, Missouri Police Officer Joshua Mousaw was dispatched to the Pizza Hut restaurant located at 350 Southwest Blue Parkway. Tr. at 9-11[2]; Doc. 46 at 1.[3] Officer Mousaw, who has nearly ten years of law enforcement experience, was advised an intoxicated driver was asleep in a car parked in the drive-through lane. Tr. at 11-12; Doc. 46 at 1.

2. Upon arriving at Pizza Hut, Officer Mousaw observed a purple Chevrolet Malibu parked at the drive-through window. Tr. at 12; Doc. 46 at 1; Gov't Ex. 1 at 23:20:34 – 23:20:43.[4] The officer parked his patrol car and walked up to the vehicle. Tr. at 12; Doc. 46 at 1; Gov't Ex. 1 at 23:20:44 – 23:21:12.

---

[2] With no objection from either party, Officer Mousaw testified via videoconference. Tr. at 8-54.

[3] During the hearing, the parties stipulated the excerpt from Officer Mousaw's written report set forth in Defendant's Motion to Suppress (*see* Doc. 46 at 1-2) was accurate and could be considered by the Court. Tr. at 63-66.

[4] Government's Exhibit 1 is the video recorded by Officer Mousaw's "dashcam" – i.e., a camera located behind his patrol car's rearview mirror. Tr. at 24-25. The officer testified the video's timestamps are inaccurate. Tr. at 24-25. Officer Mousaw confirmed the content of the dashcam video, including the elapsed time between events, is accurate even though the actual time is not accurate. Tr. at 27-28.

3. As he approached, Officer Mousaw identified the odor of marijuana emanating from the vehicle. Tr. at 13-14, 32, 44, 50-51; Doc. 46 at 1-2.[5] Once standing by the vehicle, Officer Mousaw visually inspected the interior of the car before attempting to wake up the driver. Gov't Ex. 1 at 23:21:13 – 23:21:34; Tr. at 13. The dashcam video shows ambient lighting from the canopy over the drive-through window. Tr. at 48; Gov't Ex. 1 at 23:20:40 – 23:21:34. The dashcam video also shows that Officer Mousaw used a flashlight during his visual inspection. Tr. at 48; Gov't Ex. 1 at 23:21:13 – 23:21:34. He observed large pieces of marijuana shake[6] on the driver's side floorboard. Tr. at 13, 32-33; Doc. 46 at 2.

4. Officer Mousaw noticed the driver's window was down, and the driver was slumped over with his head on the steering wheel. Tr. at 12; Doc. 46 at 1. The officer believed the driver was sleeping. Tr. at 12-13, 31-32; Doc. 46 at 1. The driver, who was the vehicle's sole occupant, was later identified as Defendant. Tr. at 12-13.

5. To rouse Defendant, Officer Mousaw said, "Hey, sir," or "Hey, man." Tr. at 15, 31; Gov't Ex. 1 at 23:21:33 – 23:21:39; Doc. 46 at 2. Defendant awoke, and the officer introduced himself. Tr. at 15, 31; Doc. 46 at 2; Gov't Ex. 1 at 23:21:34 – 23:21:41. According to Officer Mousaw, Defendant appeared confused, his speech was slurred, and his eyes were bloodshot. Tr. at 15, 36; Doc. 46 at 2. Based on his training and experience, the officer believed Defendant may have been intoxicated. Tr. at 15, 17.

6. Officer Mousaw requested Defendant turn off the vehicle and hand the keys over, and Defendant complied. Tr. at 37-39; Gov't Ex. 1 at 23:21:41 – 23:21:59. The officer asked

---

[5] Officer Mousaw's identification of the odor of marijuana was based on his training and experience. He has participated in roughly ten training sessions regarding marijuana recognition, attended criminal drug interdiction training, and previously made "hundreds" of arrests involving marijuana during which he smelled the odor of marijuana. Tr. at 13-14, 28, 47, 50.

[6] "Marijuana shake," according to Officer Mousaw, is "loose pieces of marijuana." Tr. at 33.

3

Defendant if he had his driver's license with him. Tr. at 16, 39; Gov't Ex. 1 at 23:22:00 – 23:22:02. He responded, "No, I don't have no driver's license." Tr. at 16, 39, 52-53; Gov't Ex. 1 at 23:22:02 – 23:22:04. Officer Mousaw inquired if Defendant had any identification, and Defendant said he did not. Gov't Ex. 1 at 23:22:04 – 23:22:07.

7. When requested, Defendant identified himself, spelled his name, and gave his birthdate. Gov't Ex. 1 at 23:22:57 – 23:23:14, 23:24:21 – 23:24:34. The officer provided the information to dispatch, who advised Defendant was on federal pretrial release. Tr. at 17, 42-43; Gov't Ex. 1 at 23:24:43 – 23:24:47, 23:26:01 – 23:26:10. Defendant confirmed he was on "federal probation." Gov't Ex. 1 at 23:26:20 – 23:26:30.

8. When Officer Mousaw asked Defendant to exit the vehicle, Defendant did as requested. Tr. at 19-20; Doc. 46 at 2; Gov't Ex. 1 at 23:26:54 – 23:27:10. The officer informed Defendant that based on the marijuana shake on the floorboard and the odor of marijuana, he was going to search the vehicle, and Defendant would be detained pending the search. Tr. at 18, 20, 49-50; Doc. 46 at 2; Gov't Ex. 1 at 23:27:29 – 23:27:51.

9. Defendant was specifically told he was not under arrest. Gov't Ex. 1 at 23:27:34 – 23:27:36. Officer Mousaw testified that Defendant was handcuffed before the search for officer safety. Tr. at 20. Defendant told the officer that he did not smoke weed, and the car was not his. Tr. at 20, 44; Doc. 46 at 2; Gov't Ex. 1 at 23:27:53 – 23:27:58. Although not communicated to law enforcement at the time, Defendant's sister rented the vehicle and gave him permission to drive it. Tr. at 57-62. Defendant was not listed on the rental agreement. Tr. at 58.

10. After escorting Defendant away from the vehicle, Officer Mousaw asked Defendant if there was anything in his pockets. Tr. at 20-21; Gov't Ex. 1 at 23:27:29 – 23:27:31, 23:28:03 – 23:28:17. Defendant said only money was in his pockets. Tr. at 21; Gov't Ex. 1 at 23:28:17 –

23:28:19. Officer Mousaw asked if he could search Defendant's pockets, Defendant consented to a search of his pockets, and approximately $8,000 was recovered. Tr. at 21; Gov't Ex. 1 at 23:28:19 – 23:29:04.[7]

11. When searching the vehicle, Officer Mousaw found controlled substances, drug paraphernalia, and a firearm. Tr. at 18, 21-24; Gov't Exs. 3-29. Thereafter, Defendant was placed under arrest for possession of a controlled substance. Tr. at 17-19, 23.[8]

12. Pursuant to Lee's Summit Police Department's policy, an officer may order a vehicle be towed from private property when, *inter alia*, the vehicle's operator "is taken into custody and the vehicle/property would be left unattended on private property of another without consent and there is no person(s) present who can legally remove the vehicle/property with the operator's/owner's consent." Tr. at 25-26; Gov't Ex. 2 at 4. Further, since Defendant could not safely drive the vehicle due to his suspected intoxication and his lack of a driver's license, the car could have been towed if, in an officer's judgment, the vehicle was going to be abandoned and would unreasonably interfere with the use of the real property. Tr. at 25; Gov't Ex. 2 at 4. The policy requires law enforcement to inventory the vehicle being towed. Tr. at 25-26; Gov't Ex. 2 at 2. In addition, law enforcement must remove all "[w]eapons, contraband, . . . and items having potential evidentiary value." Tr. at 26; Gov't Ex. 2 at 2.

13. Regardless of his decision to tow the vehicle due to the discovery of criminal activity during his search of the vehicle, Officer Mousaw testified he would have ordered a tow of the vehicle because Defendant, who was not legally permitted to drive in Lee's Summit, could not

---

[7] If Defendant had not consented to a search at this point, Officer Mousaw testified he would have conducted a search incident to Defendant's later arrest, and the money would have been recovered then. Tr. at 23.

[8] Officer Mousaw testified that had Defendant not been arrested for possession of a controlled substance, he likely would have been arrested for suspicion of driving while intoxicated. Tr. at 17.

continue to operate the vehicle. Tr. at 16, 25, 49, 61.[9] The officer also would have ordered a tow of the vehicle because it was blocking traffic in Pizza Hut's drive-through and interfering with private property. Tr. at 25.[10]

### III. DISCUSSION

Defendant moves to suppress all evidence seized from his person and the vehicle he was driving on May 8, 2020. Doc. 46. He contends Office Mousaw did not have reasonable suspicion to detain him and search his person and the vehicle. *Id.* at 3-5. The Government first argues Defendant does not have standing to assert a Fourth Amendment violation associated with the search of the vehicle. Doc. 47 at 5-6. If Defendant has standing, the Government maintains law enforcement had reasonable suspicion to detain Defendant and probable cause to search, seize, tow, and inventory the vehicle. *Id*. at 7-14. The Government also argues Defendant consented to the search of his pockets. *Id*. at 14-15. In the alternative, the Government claims the money in Defendant's pockets, and the evidence recovered from the vehicle he drove would have been inevitably discovered. *Id*. at 14-16.

**A.      Standing**

The Fourth Amendment provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…" U.S. Const. amend. IV. "An individual asserting Fourth Amendment rights must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *United States v. Sierra-Serrano*, 11 F.4th 931, 933 (8th Cir. 2021), *cert. denied,* 142

---

[9] In Lee's Summit, it is illegal to drive without a valid license. Lee's Summit, Mo., Mun. Code, § 29-106(A) (2019), https://library.municode.com/mo/lee's_summit/codes/code_of_ordinances/334782?nodeId=COOR_CH29TRMOVE_ARTIINGE.  Defendant's license expired in 2012.  Gov't Ex. 25.

[10] Based on his experience and observations, Officer Mousaw also believed Defendant was unable to drive safely. Tr. at 16-17. For this additional reason, he could have towed the vehicle if Defendant was taken into custody or the car was going to be abandoned and would reasonably interfere with the use of the real property. Gov't Ex. 2 at 4.

S. Ct. 1219 (2022) (citation omitted). When moving to suppress evidence, the defendant bears the burden of demonstrating by a preponderance of the evidence that he or she had a "legitimate expectation of privacy in the area searched or the item seized." *United States v. Bettis*, 946 F.3d 1024, 1027 (8th Cir. 2020) (citation omitted).

An individual who owns and possesses a vehicle "almost always has a reasonable expectation of privacy in it." *Byrd v. United States*, 138 S. Ct. 1518, 1527 (2018). Additionally, an authorized driver of a rental vehicle generally has a reasonable expectation of privacy in the vehicle. *See id*. at 1528-29. Most relevant to the matter before the Court, a driver not listed on a rental car agreement but who has the renter's permission to drive the rental vehicle typically has a reasonable expectation of privacy in the vehicle. *See id*. at 1527-28, 1531; *see also Bettis*, 946 F.3d at 1028; *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995). Here, Defendant testified his sister rented the Chevy Malibu and gave him permission to drive it. No evidence to the contrary was offered.

An additional fact the Court must consider is Defendant was unlawfully operating the vehicle because he did not have a valid driver's license. This fact, however, does not diminish Defendant's expectation of privacy in the rental vehicle he drove. "[T]he illegal act of unlicensed driving does not interfere with a valid possessory interest." *Bettis*, 946 F.3d at 1029. As the Eighth Circuit Court of Appeals has held, "an unauthorized and unlicensed driver may challenge a search of a rental car operated with the renter's permission." *Id*. Based on the foregoing, the undersigned recommends the Court find Defendant presented sufficient evidence that he had permission to drive the rental vehicle, and therefore, he had a reasonable expectation of privacy in the vehicle and has Fourth Amendment standing to challenge the search in question.

### B. Reasonable Suspicion to Detain Defendant

Defendant contends his Fourth Amendment rights were violated because Officer Mousaw did not have reasonable suspicion to immediately detain and arrest him. *See* Doc. 46 at 3-5. The Government submits Defendant was not arrested but instead was the subject of an investigative detention while law enforcement searched the vehicle. *See* Tr. at 20, 49-50.

The Constitution does not forbid all searches and seizures, but only those that are unreasonable. *See Terry v. Ohio*, 392 U.S. 1, 9 (1968). A warrantless seizure "is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions." *United States v. Lewis*, 864 F.3d 937, 943 (8th Cir. 2017) (quoting *Coolidge v. N.H.*, 403 U.S. 443, 474 (1971)). One exception to the Fourth Amendment warrant requirement is a brief investigative, or *Terry*, stop. *Terry*, 392 U.S. at 27-30. The Fourth Amendment permits brief investigative stops when law enforcement has reasonable, articulable suspicion that the person stopped is, or is about to be, engaged in criminal activity. *See United States v. Cortez*, 449 U.S. 411, 417 (1981); *United States v. Slater*, 979 F.3d 626, 629 (8th Cir. 2020).

Reasonable suspicion does not require "absolute[] certain[ty];" rather, an officer must observe "unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." *Terry*, 392 U.S. at 27-30. Reasonable suspicion requires more than a mere hunch, but the likelihood of criminal activity need not rise to the level required for probable cause. *Kansas v. Glover,* 140 S. Ct. 1183, 1188 (2020) (noting reasonable suspicion is a "less demanding" standard than probable cause); *Slater*, 979 F.3d at 629; *United States v. Sanchez,* 955 F.3d 669, 674-75 (8th Cir. 2020). Additionally, reasonable suspicion "falls considerably short

of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (citation omitted).

In determining whether an officer had reasonable suspicion, courts "look at the totality of the circumstances, allowing officers to draw on their experience and training." *United States v. Lawhorn*, 735 F.3d 817, 820 (8th Cir. 2013) (citation omitted); *see also Arvizu*, 534 U.S. at 273. Courts consider "what the officer reasonably knew at the time, rather than assessing the existence of reasonable suspicion with the vision of hindsight." *Slater,* 979 F.3d at 629 (internal quotations and citation omitted). When assessing the overall level of suspicion, courts may not view individual elements of suspicion in isolation but must view the elements of suspicion in context and give due weight to the officer's inferences. *Sanchez,* 955 F.3d at 675. The burden is on the Government to prove the officer had reasonable suspicion that criminal activity was afoot, not that the subject of the stop was actively engaged in a crime. *United States v. Fields*, 832 F.3d 831, 834 (8th Cir. 2016).

The circumstances surrounding Officer Mousaw's encounter with Defendant provided more than reasonable suspicion to conduct an investigative detention of Defendant. First, Officer Mousaw smelled marijuana emanating from the vehicle driven by Defendant, and for this reason alone, he had reasonable suspicion to detain Defendant.[11] *See United States v. Gipp*, 147 F.3d 680, 685 (8th Cir. 1998) (holding the smell of burnt marijuana provided a "particularized and objective basis" for suspecting the defendant was or had recently engaged in criminal activity). Second, the

---

[11] On May 8, 2020, possession of marijuana violated federal, state, and local law. 21 U.S.C. § 841(a)(1) (2018); Mo. Rev. Stat. § 579.015 (2017); Lee's Summit, Mo., Mun. Code §§ 17-237, 17-240 (2019), https://library.municode.com/mo/lee's_summit/codes/code_of_ordinances/334782?nodeId=COOR_CH17OF_ARTV IIICOSU. Defendant argues Missouri legalized marijuana for medical purposes in 2018. Doc. 46 at 4; *see* Mo. Const. art. 14, § 1(1) (granting "patients with qualifying medical conditions…the right to use medical marijuana for treatment under the supervision of a physician."). But, as Defendant points out, "[t]he first licensed sales began in October 2020." Doc. 46 at 4. Defendant was arrested on May 8, 2020. Additionally, there is no evidence establishing Defendant was qualified to use medical marijuana or possessed a medical marijuana card.

officer's observation of marijuana shake on the driver's floorboard provided reasonable suspicion of drug activity. *See United States v. Blakely*, 439 F. App'x 803, 805 (11th Cir. 2011) (finding law enforcement "had at least reasonable suspicion that criminal activity was afoot at the moment when one officer…saw what he believed to be crack cocaine and plastic bags on the floor of the driver's side"); *United States v. Svarda*, No. 3:20-cr-00329-JD-2, 2021 WL 4951451, at *3-4 (N.D. Cal. Oct. 25, 2021) (holding law enforcement's observation of "a baggie possibly full of cocaine" in a car "created reasonable suspicion for a stop.").

Third, Officer Mousaw found Defendant in the driver's seat of a running vehicle in Pizza Hut's drive-through lane where his head was slumped over the steering wheel, and he appeared to be either asleep or passed out. These observations established reasonable suspicion to detain Defendant to investigate whether he was driving while intoxicated.[12] *See United States v. Maxwell*, No. 14-00126-01-CR-W-DGK, 2015 WL 672312, at *4 (W.D. Mo. Feb. 17, 2015) (observing that where an officer "observed a vehicle parked on the side of the road with its driver slumped over the wheel," there was reasonable suspicion to investigate whether the driver had been driving while intoxicated). Fourth, upon waking, Defendant seemed confused, had slurred speech, and his eyes were bloodshot. These facts also provided Officer Mousaw with reasonable suspicion to detain Defendant. *See United States v. Gossitt*, No. 10-CR-42-LRR, 2010 WL 4286130, at *2 (N.D. Iowa Oct. 22, 2010) (finding the defendant's bloodshot and watery eyes, slurred speech, and swaying constituted a reasonable suspicion).

---

[12] On May 8, 2020, driving while intoxicated violated state and local law. Mo. Rev. Stat. § 577.001(13) (2018) ("Intoxicated…[is] when a person is under the influence of alcohol, a controlled substance, or drug, or any combination thereof"); Mo. Rev. Stat. § 577.010(1) (2017) (setting forth the offense of driving while intoxicated); Lee's Summit, Mo., Mun. Code § 29-107 (2019), https://library.municode.com/mo/lee's_summit/codes/code_of_ordinances/334782?nodeId=COOR_CH29TRMOVE_ARTIIIOPVE.

This Court is not limited to considering the foregoing circumstances singly. Instead, it must evaluate the totality of the circumstances. The Eighth Circuit and other courts have determined combinations of facts similar to those presented in this matter sufficiently established reasonable suspicion. *See, e.g.*, *See Schoettle v. Jefferson Cnty.*, 788 F.3d 855, 859 (8th Cir. 2015) (finding law enforcement reasonably suspected a person was driving while intoxicated when he was asleep in the driver's seat of a vehicle on the side of the road, and his responses to law enforcement's questions were "unintelligible or belligerent"); *United States v. Binion*, 570 F.3d 1034, 1039 (8th Cir. 2009) (holding the odor of marijuana and the defendant's "lethargy, nervousness, and shakiness" provided reasonable suspicion that the defendant was involved in criminal activity); *United States v. Broadie*, 452 F.3d 875, 879 (D.C. Cir. 2006) (concluding the defendant was properly detained after he was found slumped over the steering wheel late at night with the engine running, and noting "generally people are not [found in such a position] unless something is amiss.").[13]

Based on the totality of the circumstances surrounding the encounter between Officer Mousaw and Defendant, the undersigned recommends the Court find law enforcement had reasonable suspicion that criminal activity was afoot, and therefore, law enforcement's initial

---

[13] Defendant also contends he was "immediately detained and arrested without reasonable suspicion" at the moment he was removed from the car. Doc. 46 at 3. This argument overlooks that law enforcement already had probable cause to arrest Defendant for possession of marijuana based on the odor of marijuana and the observations of "shake" on the vehicle's floorboard. *See infra,* section III(C); s*ee also United States v. Wright,* 844 F.3d 759, 762-63 (8th Cir. 2016) (finding"[o]nce the . . . officer detected an odor of marijuana coming from [the defendant's] person, the officer had probable cause to arrest" the defendant); *United States v. Perdoma,* 621 F.3d 745, 749 (8th Cir. 2010) (holding the investigator had probable cause to arrest the defendant for marijuana possession when he detected the odor of marijuana emanating from the defendant). Here, although Officer Mousaw smelled the odor of marijuana coming from the vehicle and saw marijuana shake on the vehicle's floorboard, he did not immediately effectuate an arrest. Instead, he placed Defendant in an investigative detention for officer safety while they searched the vehicle. It is recommended that the Court need not determine whether the officer's use of an investigative detention rose to the level of a formal arrest because, even assuming an arrest occurred, the officers had probable cause at that time to arrest Defendant for possession of marijuana. *See also United States v. Houston,* 548 F.3d 1151, 1153-54 (8th Cir. 2008). Further, the officer testified that based on his observations, Defendant could have been separately arrested for suspicion of driving while intoxicated. Tr. at 17.

encounter and Defendant's investigative detention upon exiting the vehicle was reasonable and did not violate the Fourth Amendment.

C.     **Probable Cause to Search and Seize the Vehicle**

Under the automobile exception to the warrant requirement, law enforcement may seize and search a vehicle when they develop probable cause to believe it contains contraband or evidence of criminal activity. *United States v. Keck*, 2 F.4th 1085, 1089 (8th Cir. 2021); *United States v. Soderman*, 983 F.3d 369, 375 (8th Cir. 2020), *cert. denied*, 142 S. Ct. 159 (2021); *United States v. Sims*, 424 F.3d 691, 693 (8th Cir. 2005). "Determining whether probable cause exists at the time of the search is a 'commonsense, practical question' to be judged from the 'totality-of-the-circumstances.'" *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). "Probable cause…does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *Id*. (citations omitted).

The Eighth Circuit has found the odor of an illegal drug may provide probable cause for a warrantless search or seizure of a vehicle under the automobile exception. *United States v. Merrett*, 8 F.4th 743, 751 (8th Cir. 2021) (citation omitted); *United States v. Smith*, 789 F.3d 923, 928-29 (8th Cir. 2015) (collecting cases). Officer Mousaw credibly testified that, based on his experience and training, he smelled marijuana emanating from the vehicle. Defendant was the sole occupant, and there were no other vehicles or individuals in the vicinity. The officer also observed marijuana shake in plain view on the driver's side floorboard upon his initial inspection of the vehicle's interior prior to initiating contact with Defendant. Officer Mousaw explained that Defendant, once awake, was confused, his speech was slurred, and his eyes were bloodshot, which are indicative

of intoxication.[14] Based on his training and experience, Officer Mousaw believed the vehicle contained evidence of criminal activity. Based on the foregoing, the undersigned recommends the Court find there was probable cause to search and seize the vehicle under the automobile exception to the Fourth Amendment warrant requirement.

**D.      Search of Defendant's Person**

The Government asserts Defendant consented to the search of his person, and thus, the recovery of more than $8,000 from his pockets should not be suppressed. Doc. 47 at 14-15. "A warrantless search is valid under the Fourth Amendment if it is 'conducted pursuant to the knowing and voluntary consent of the person subject to a search.'" *United States v. Gastelum*, 11 F.4th 898, 904 (8th Cir. 2021) (quoting *United States v. Sanders*, 424 F.3d 768, 773 (8th Cir. 2005)). To establish voluntary consent to a search, "the Government must demonstrate by a preponderance of the evidence that consent was 'the product of an essentially free and unconstrained choice.'" *United States v. Garcia-Garcia*, 957 F.3d 887, 895 (8th Cir. 2020) (quoting *United States v. Cedano-Medina*, 366 F.3d 682, 684 (8th Cir. 2004)). An individual voluntarily consents to a search if, by his or her words and conduct, he or she causes a "reasonable person to believe" the individual "has knowingly and voluntarily consented, whether or not the person actually intends to consent." *Cedano-Medina*, 366 F.3d at 684-85; *see also United States v. Esquivias*, 416 F.3d 696, 700 (8th Cir. 2005). When determining if an officer reasonably believed an individual knowingly and voluntarily consented to a search, courts consider the totality of the circumstances. *See United States v. Saenz*, 474 F.3d 1132, 1137 (8th Cir. 2007).

---

[14] Officer Mousaw testified that based on his training and experience, it appeared Defendant may have been intoxicated, and therefore, he could have been separately arrested for suspicion of driving while intoxicated. Thus, on this record, there was also probable cause to arrest Defendant for driving while intoxicated. At the suppression hearing, Defendant cross-examined the officer concerning the fact that standard field sobriety tests had not been administered. Tr. at 35-37. In the absence of field sobriety tests, other observations can be sufficient to support probable cause to arrest for driving under the influence under Missouri state law. *See, e.g.*, *Missouri v. Swartz*, 517 S.W.3d 40, 56 (Mo. Ct. App. 2017). The lack of field sobriety tests is not dispositive on the issue of probable cause.

After escorting Defendant away from the vehicle, Office Mousaw asked Defendant if he had anything in his pockets. Defendant said he only had money in his pockets. The officer asked if Defendant cared if the officer checked his pockets. Defendant, according to Officer Mousaw's testimony, consented to the search of his pockets. The dashcam video also captures this conversation between Officer Mousaw and Defendant.[15] No contrary evidence was presented.

Additionally, the video reveals the entire encounter between Officer Mousaw and Defendant. Among other things, the video demonstrates Defendant was responsive to Officer Mousaw's questions, he openly conversed with the officer about his difficulties getting the pizza he ordered, he told the officer he was on federal probation, he denied smoking weed, and he told the officer the vehicle was not his. While Defendant was confused upon waking, the video shows he was able to answer the officer's subsequent questions, convey information, and communicate his thoughts. Based on the totality of the circumstances, including but not limited to Defendant's words and conduct, a reasonable person would have believed Defendant consented to the search of his pockets. Accordingly, the undersigned recommends the Court find Defendant consented to the search of his pockets.

**E. Inevitable Discovery**

In the alternative, the Government maintains the motion to suppress should be denied because the money in Defendant's pockets and the contraband in the vehicle he drove would have been inevitably discovered. Doc. 47 at 14-16. The Eighth Circuit utilizes two approaches to evaluate the inevitable discovery doctrine. *See United States v. Baez*, 983 F.3d 1029, 1038 (8th Cir. 2020). Under the first approach, evidence is admissible if the Government establishes by a

---

[15] Although Defendant said "yes" or "yeah" when asked if he cared about Officer Mousaw checking his pockets, the video also reveals Defendant's overall tone and demeanor, which indicated he voluntarily consented to the search.

14

Case 4:20-cr-00145-BCW   Document 56   Filed 08/03/22   Page 14 of 18

preponderance of the evidence that the "evidence would have been acquired lawfully but for the constitutional violation." *Id*. (citations omitted). Under the second approach, the inevitable discovery doctrine applies if the Government demonstrates by a preponderance of the evidence that (1) "there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct," and (2) law enforcement was "actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." *United States v. Connor*, 127 F.3d 663, 667 (8th Cir. 1997) (citation omitted); *see also Baez*, 983 F.3d at 1039. Regardless of which approach is utilized, the undersigned recommends a finding that the evidence should not be suppressed pursuant to the inevitable discovery doctrine.

**(1)    Evidence in the Vehicle**

Even if law enforcement did not have probable cause to search the vehicle driven by Defendant, the evidence found therein would have been inevitably discovered had the officers conducted an inventory search pursuant to the tow policy. Impounding a vehicle does not violate the Fourth Amendment if "the decision to impound is guided by a standard policy – even a policy that provides officers with discretion as to the proper course of action to take – and the decision is made 'on the basis of something other than suspicion of evidence of criminal activity.'" *United States v. Le*, 474 F.3d 511, 514 (8th Cir. 2007) (quoting *Colorado v. Bertine*, 479 U.S. 367, 375 (1987)); *see also United States v. Green*, 929 F.3d 989, 992 (8th Cir. 2019) ("An inventory search is reasonable if it is conducted according to standardized police procedures, because doing so vitiates concerns of an investigatory motive or excessive discretion.") (citation and internal quotations omitted). "If an impoundment is otherwise valid, an investigatory motive does not prevent police from towing a vehicle and conducting an inventory search." *United States v. Evans*, 781 F.3d 433, 437 (8th Cir. 2015) (citation omitted).

The Lee's Summit Police Department policy permitted officers to tow vehicles in certain instances. *See* Gov't Ex. 2. Relevant to this matter, officers could tow a vehicle from private property when "the owner/operator is taken into custody and the vehicle/property would be left unattended on private property of another without consent and there is no person(s) present who can legally remove the vehicle/property with the operator/owner's consent." *Id*. at 4. Further, had the vehicle become abandoned because Defendant could not safely or lawfully operate it, the officer in his judgment could have towed the vehicle if it "unreasonably interferes with the use of the real property by the person in possession." *Id.* Pursuant to the police department's policy, officers are required to inventory the vehicle being towed. *Id*. at 2.

There were several bases for towing the vehicle driven by Defendant independent of the items found pursuant to the search of the vehicle. First, Officer Mousaw testified that Defendant was unable to safely operate the vehicle. Second, Defendant admitted he did not have a driver's license, and the officer could not allow Defendant to continue to operate the vehicle under local ordinances. Third, no passengers were present who could have legally removed the car.

Had law enforcement towed the vehicle for any of the foregoing reasons, they were required to conduct an inventory search of vehicle under the standard tow policy. The inventory search would have uncovered the contraband in the vehicle. Accordingly, the undersigned recommends a finding that the evidence seized from the vehicle driven by Defendant should not be suppressed pursuant to the inevitable discovery doctrine.

**(2)     Money in Defendant's Pockets**

Even if Defendant had not consented to the search of his pockets, the money would have been inevitably discovered. A search incident to a lawful arrest is an exception to the warrant requirement. *Arizona v. Gant*, 556 U.S. 332, 338 (2009); *United States v. Perdoma*, 621 F.3d 745,

16
Case 4:20-cr-00145-BCW    Document 56    Filed 08/03/22    Page 16 of 18

750 (8th Cir. 2010). "The authority to search the person incident to a lawful custodial arrest…does not depend on what a court may later decide was the probability…that weapons or evidence would in fact be found upon the person of the suspect." *United States v. Robinson*, 414 U.S. 218, 235 (1973). "It is the fact of the lawful arrest which establishes the authority to search." *Id*.

Law enforcement is "permitted to arrest without a warrant if a misdemeanor is committed in the officer's presence." *United States v. Lewis*, 183 F.3d 791, 794 (8th Cir. 1999) (citations omitted). Defendant could have been lawfully arrested for possession of a controlled substance based on the odor of marijuana and the officer's plain view observations of marijuana shake on the floorboard of the car prior to the search of the car. Additionally, Defendant could have been arrested for driving while intoxicated and/or driving without a license. Further, had the vehicle search occurred without the search of his pants pocket in question, Defendant would have been arrested for possession of controlled substances, receiving a firearm while under indictment, and/or possessing a firearm while on federal pretrial release. Under any of these scenarios, any search of his person incident to arrest would have been permitted. *Id.* A search incident to arrest may reasonably include searching the pockets of pants. *United States v. Pratt*, 355 F.3d 1119, 1122 (8th Cir. 2004). During the search incident to arrest, law enforcement would have inevitably discovered the money in Defendant's pockets. For these reasons, the undersigned recommends a finding that the money seized from Defendant's pockets should not be suppressed pursuant to the inevitable discovery doctrine.

## IV.  CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying Defendant's Motion to Suppress (Doc. 46).

17

Counsel are reminded they have fourteen days in which to file any objections to this Report and Recommendation. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation except on the grounds of plain error or manifest injustice.

DATE: August 3, 2022                                /s/ W. Brian Gaddy
                                                                                                                     W. BRIAN GADDY
                                                                                                                      UNITED STATES MAGISTRATE JUDGE